UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

BOBBY E. WORTHAM and
SYLVIA E. WORTHAM,

Plaintiff(s),

v.

WESTERN MUTUAL INSURANCE
COMPANY,

Defendant(s).

Case No. 2:16-CV-2988 JCM (CWH)

ORDER

Presently before the court is defendant Western Mutual Insurance Company's ("Western Mutual") motion for partial summary judgment. (ECF No. 26). Plaintiffs Bobby E. Wortham and Sylvia E. Wortham, husband and wife, ("plaintiffs") filed a response (ECF No. 46), to which the Western Mutual replied (ECF No. 52).

Also before the court is plaintiffs' motion for Rule 56(d) relief regarding Western Mutual's motion for partial summary judgment. (ECF No. 48).

**I.     Facts**

The present case involves a dispute over plaintiffs' homeowner's policy purchased from Western Mutual. (ECF No. 26). The policy covered the premises at 229 Heaven Sent Court, Henderson, NV 89074 (the "property"). *Id.* Plaintiffs have paid insurance premiums to Western Mutual since 1999. (ECF No. 46).

On May 3, 2016, plaintiffs notified Western Mutual of a fire at the property. (ECF No. 26). Plaintiffs told Western Mutual that their son, the full time resident of the property, discovered the fire. *Id.* As a result of the fire, plaintiffs made a claim on their homeowner's policy. *Id.*

Plaintiffs' homeowner's policy defines "residence premises" as the one family dwelling where the named insured resides and which is shown as the residence premises on the declarations. (ECF No. 26, Ex. C). Plaintiffs had moved out of the property in 2009 and purchased a single story home because Bobby Wortham could no longer climb the stairs. (ECF No. 26). Plaintiffs' adult son resided at the property full-time. *Id.* Plaintiffs left furniture, computers, and TVs at the premises for their son to use. *Id.*

On May 11, 2016, Western Mutual notified plaintiffs that because plaintiffs were not residing at the property full-time at the time of the fire, but instead their son was, there was no coverage for the dwelling under plaintiffs' homeowner's policy. (ECF No. 26, Exhibit A). Additionally, Western Mutual notified plaintiffs that their "loss of use" coverage covered only the part of the property where plaintiffs resided that was made unfit for habitation by the fire loss. *Id.* Because plaintiffs, the insureds, were not residing at the property at the time of the fire, they did not qualify for this coverage. *Id.*

In the same correspondence, Western Mutual notified plaintiffs that the policy did provide coverage for their personal property located at the property at the time of the fire. (ECF No. 26, Exhibit A).

In December of 2015, Western Mutual submitted the form titled "HO NV SP WM 15" (the "new form") to the Nevada Division of Insurance for approval. (ECF No. 46). The new form added the language ". . . . and which is occupied by you as your primary residence" to the definition of "residence premises." *Id.* The declarations page of the policy lists the new form. *Id.* However, on May 3, 2016, the date of the fire, Western mutual acknowledged that plaintiffs had not received proper notice of the inclusion of the new form and thus, the new definition would not be applied to plaintiffs' claim. *Id.* Instead, the form included in plaintiffs' policy prior to the update (the "old form") would be applied. *Id.* The old form defined "residence premises" as the one family dwelling where the named insured resides and which is shown as the residence premises on the declarations. *Id.* Neither the old form nor the balance of the policy defines the word "resides." *Id.* Further, the declarations sheet states: "the premises covered by the policy is located at: 229 Heaven Sent Ct Henderson, NV 89704-8751." *Id.* Nonetheless, Western Mutual has relied on the "primary

residence" language throughout its communications with plaintiffs, including its denial of plaintiffs' claim.

Plaintiffs retained the Greenspan Company in order to assist them with the inventory of damages to their personal property. (ECF No. 26). Plaintiffs then retained an attorney. *Id.* On August 23, 2016, plaintiffs' attorney sent Western Mutual a demand letter asserting that the declarations page of the policy and the policy's boiler plate language created a reasonable expectation of coverage. *Id.* Further, plaintiffs' attorney also asserted that plaintiffs' son's person and property were also insured under the policy and that the loss of use coverage was not dependent on plaintiffs' occupancy of the property. *Id.*

In response, Western Mutual requested the examination under oath ("EUOs") of plaintiffs in order to reconsider its previous denial of the claim and to conduct further investigation. (ECF No. 26, Exhibit D). On November 9, 2017, the EUOs of plaintiffs were taken. *Id.* From the EUOs, Western Mutual learned that plaintiffs moved into the home in 1999 and plaintiffs' two sons Shane and Devin each lived at the property from 1999 until 2015 and from 2003 until the fire, respectively. *Id.* Plaintiffs' sons helped pay the mortgage. (ECF No. 26, Exhibit E). Sylvia Wortham only went to the property once a week after 2009 and did not leave any personal items there, besides some furniture and wall hangings used by her sons. *Id.*

Plaintiffs report the property to the IRS as a "rental property" for tax purposes. (ECF No. 26, Exhibit D). Bobby Wortham regularly visited the house to do chores and general upkeep, and while he did not keep any toiletries or medication there, he occasionally slept there. *Id.* When plaintiffs moved in 2009, Bobby Wortham updated his voter registration to reflect plaintiffs' new address. *Id.*

On November 11, 2017, plaintiffs filed the underlying complaint alleging three causes of action: (1) breach of contract and implied covenant of good faith and fair dealing; (2) tortious bad faith claims handling; and (3) negligent marketing. (ECF No. 1).

In the instant motion, Western Mutual moves for partial summary judgment as to plaintiffs' extra-contractual claims, or in the alternative, to bifurcate, pursuant to Federal Rule of Civil Procedure 56(c). (ECF No. 26).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

As an initial matter, the court will grant plaintiffs' motion requesting the court to consider Rule 56(d) and the attached procedurally required declaration in conjunction with plaintiffs' response to Western Mutual's partial summary judgment motion. (ECF No. 48). Western Mutual did not file a response, and the time to do so has since expired. As requested in plaintiffs' motion, the court has considered plaintiffs' motion (ECF No. 48) and the attached declaration in conjunction with plaintiffs' response (ECF No. 46).

In Western Mutual's motion, it requests the court grant summary judgment as to plaintiffs' extra-contractual claims. (ECF No. 26). As Western Mutual's motion fails to substantively address plaintiffs' negligent marketing claim, and instead only plaintiffs' claim for tortious bad faith claims handling, the court will consider Western Mutual's motion for summary judgment as to plaintiffs' claim for tortious bad faith claims handling only.

"Nevada's definition of bad faith is: (1) an insurer's denial of (or refusal to pay) an insured's claim; (2) without any reasonable basis; and (3) the insurer's knowledge or awareness of the lack of any reasonable basis to deny coverage, or the insurer's reckless disregard as to the unreasonableness of the denial." *Schumacher v. State Farm Fire & Cas. Co.*, 467 F. Supp. 2d 1090, 1096 (D. Nev. 2006).

Moreover, the Ninth Circuit has recognized the "general dispute" doctrine. This doctrine protects insurers from bad faith claims where the insurer can show that there was a genuine dispute about coverage. Under the genuine dispute doctrine, a bad faith claim can be dismissed on summary judgment if the defendant can show that there was a genuine dispute as to coverage. *See Guebara v. Allstate Insurance Company*, 237 F.3d 987, 992 (9th Cir. 2001). The key to a bad faith claim is whether the insurer's denial of the coverage was reasonable. *Id.* The Nevada Supreme Court has consistently applied the genuine dispute doctrine when considering an insurer's actions. *See Allstate Ins. Co. v. Miller*, 125 Nev. 300, 212 P.3d 318 (Nev. 2009). As a matter of law, an insurer cannot be found liable for bad faith if it had a reasonable basis to contest coverage. *American Excess Insurance Company v. MGM*, 102 Nev. 601, 729 P.3d 1352 1986).

Here, Western Mutual argues that the coverage for the property following the house fire presents a "genuine dispute" because plaintiffs had been living in another dwelling full-time for approximately seven years at the time of the fire. (ECF No. 26). Based on plaintiff's testimony, Western Mutual contends that plaintiffs were merely visitors to the property and that plaintiffs' sons, who were not named on the policy, in fact occupied the property. *Id.* Accordingly, Western Mutual argues that because it has a reasonable basis to deny coverage, plaintiffs' claim for bad faith fails. *Id.*

Plaintiffs argue that "an overwhelming amount of equities militate against [d]efendant's motion." (ECF No. 46 at 4). Plaintiffs paid insurance premiums to Western Mutual for approximately 17 years without ever submitting a claim until now. *Id.* They argue that Western Mutual's response to their first claim, as long-time and exemplary customers, was unreasonable under the circumstances. *Id.* at 5. Plaintiffs contend that Western Mutual has denied coverage "based on a strained interpretation of an ambiguous definition (recently amended to be less

ambiguous) buried in a form where the declarations sheet unequivocally promised coverage." *Id.* at 5.

Plaintiffs argue they have developed substantial evidence to refute the reasonableness of Western Mutual's actions under the circumstances. (ECF No. 46). Plaintiffs hired an expert who explicitly refuted the opinions of Western Mutual's expert as to the reasonableness of the position Western Mutual took regarding plaintiffs' claim. *Id.* Plaintiffs' expert argues that "when [an insurance company] uses words or phrases that are ambiguous, the ambiguity must be construed in favor of insurance coverage for the benefit of the insured. Western Mutual . . . . is not privileged to construe ambiguous words or phrases it inserted in its own policy in favor of non-coverage." (ECF No. 46, Exhibit 11 at 3).

Under Nevada law, plaintiffs argue that ambiguity in an insurance policy is construed against the drafter. *Id.* "[A]ny ambiguity or uncertainty in an insurance policy must be construed against the insurer and in favor of the insured." *Benchmark Ins. Co. v. Sparks*, 127 Nev. 407, 412—13, 254 P.3d 617, 621 (2011). The mere fact that Western Mutual amended the language in the policy defining "residence premises" indicates that the original language, the language plaintiffs argue is applicable, was ambiguous. (ECF No. 46). Further, plaintiffs argue the policy should be "construed to effectuate the reasonable expectation of the insured." *Nat'l Union Fire Ins. Co. of the State of Pa., Inc. v. Reno's Exec. Air*, 100 Nev. 360, 365, 682 P.2d 1380, 1383 (1984).

Here, plaintiffs had been paying insurance premiums for almost 17 years and Western Mutual willingly accepted these premiums. (ECF No. 46). Accordingly, plaintiffs contend they were reasonable in their expectation that their policy would cover the fire damage to the property. *Id.* Instead, Western Mutual adopted "a hyper-technical and unreasonable interpretation of [the policy's] language," especially in light of the representations on the declarations sheet. (ECF No. 46 at 10).

As Western Mutual notes in its reply, Plaintiffs' reliance on the reasonable expectation doctrine is unfounded. Right below the listed address of the property, the declarations clearly state: "subject to all policy terms, conditions & exclusions." (ECF No. 52). Accordingly, plaintiffs were

James C. Mahan
U.S. District Judge

- 7 -

put on explicit notice that the policy did not apply to the resident premises in absolute, but was subject to certain conditions, full-time occupancy being one, enumerated within the policy documents.

Further, Western Mutual sent plaintiffs annual renewal notices advising plaintiffs that "this policy provides coverage for an owner occupied home. If the property is not owner occupied, please let [Western Mutual] know as the occupancy of the property affects your coverage." (ECF No. 52, Exhibit G). Thus, plaintiffs were presented with opportunities in advance of the fire, at least once per year, to clarify with Western Mutual the status of their coverage under the policy, especially given plaintiffs' relocation in 2009. Their failure to do so undermines the reasonableness of their expectation that the policy would cover fire damage to their home in which plaintiffs no longer lived on a full-time basis, or arguably even on a part-time basis.

While plaintiffs are clearly dissatisfied with Western Mutual's decision to deny plaintiffs' claim, the court is reluctant to find Western Mutual's actions unreasonable. Western Mutual retained a public adjuster to assist with the investigation of the fire loss, took EUOs of both plaintiffs so as to understand their position, and did not deny plaintiffs' claim until the completion of an extended investigation that spanned several months. (ECF No. 52).

Accordingly, the court will grant Western Mutual's motion for partial summary judgment. (ECF No. 26). At this stage in the litigation, Western Mutual has presented the court with a genuine dispute as to the reasonableness of its conduct so as to sufficiently undermine plaintiffs' claim for tortious bad faith claims handling. Because the court finds that Western Mutual's has presented facts and raised a robust argument that a genuine dispute exists as to the reasonableness of its conduct, the court finds Western Mutual's conduct was not tortious as a matter of law. The fact that Western Mutual's conduct is in dispute to begin with indicates it did not tortuously mishandle plaintiffs' claim. Accordingly, the court will grant Western Mutual's motion for partial summary judgment as to plaintiffs' claim for tortious bad faith claims handling only.

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 8 -

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Western Mutual's motion for partial summary judgment (ECF No. 26) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that plaintiffs' motion requesting the court consider Rule 56(d) relief and an attached declaration (ECF No. 48) be, and the same hereby is, GRANTED, consistent with the foregoing.

DATED March 28, 2018.

_____
UNITED STATES DISTRICT JUDGE